UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


CIVIL ACTION NO. 14-14706-RWZ


EMSEAL JOINT SYSTEMS, LTD.

v.

MM SYSTEMS CORPORATION


CLAIM CONSTRUCTION ORDER

March 1, 2017


ZOBEL, S.D.J.

The patent in this infringement case, U.S. Patent No. 6,532,708[1] ("the '708

patent"), discloses Konrad Baerveldt's ("Baerveldt") invention related to expansion and

seismic joint covers.  Baerveldt assigned the '708 patent to Plaintiff Emseal Joint

Systems, LTD. ("Emseal").  Emseal alleges that defendant MM Systems Corporation

("MM Systems") infringes the '708 patent by manufacturing, using, offering to sell, and

selling various MM Systems' expansion joint products.  The parties disagree about the

meaning of certain terms in the '708 patent, and request the court's construction

thereof.  See Markman v. Westview Instruments, Inc., 52 F.3d 967 (Fed. Cir. 1995).

## I.    Legal Standard

Claim construction begins with the language of the claim.  Phillips v. AWH Corp.,

---

[1] U.S. Patent No. 6,532,708 B1 was confirmed in part by Ex Parte Reexamination Certificate No. 6,532,708 C1, which was confirmed in part by Ex Parte Reexamination Certificate No. 6,532,708 C2.  This opinion collectively refers to them as the "'708 Patent."

415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc).  Claim terms should be given "their

ordinary and accustomed meaning as understood by one of ordinary skill in the art."

Dow Chemical Co. v. Sumitomo Chemical Co., Ltd., 257 F.3d 1364, 1372 (Fed. Cir.

2001).  The claim's words are interpreted "in light of the intrinsic evidence of record,

including the written description, the drawings, and the prosecution history."  Power

Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc., 711 F.3d 1348, 1360 (Fed. Cir.

2013) (quoting Teleflex, Inc. v. Ficosa N. Am. Corp., 299 F.3d 1313, 1324 (Fed. Cir.

2002)).  The specification is the "single best guide to the meaning of a disputed term."

Phillips, 415 F.3d at 1315 (quoting Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576,

1582 (Fed. Cir. 1996)).  If the intrinsic record is ambiguous, and when necessary, the

court can rely on extrinsic evidence which "consists of all evidence external to the

patent and prosecution history, including expert and inventor testimony, dictionaries,

and learned treatises."  Id. at 1317 (quoting Markman, 52 F.3d at 980).

## II.    Background

Baerveldt explains in the '708 patent that before his invention, there were various

mechanisms used to stabilize expansion/seismic joint covers.  According to Baerveldt,

these methods "suffer[ed] from three major problems."  Docket # 85-1, Col. 1:63–64.

First, the expansion and seismic joint covers used in the prior art lacked the ability for

one to inspect and clean out the joint without removing the whole joint assembly.  The

second and third problems were both focused on the lack of watertight properties in the

prior art designs.  Therefore, Baerveldt's invention addressed these two primary

concerns missing in the field of expansion and seismic joints; namely, (1) "that the

cover plate should be removable to permit inspection of the joint below[,]" and (2) "that

2

the joint be should be watertight at, or immediately below, the line of waterproofing that is applied to the deck." Id. at Col. 2:5-10.

In the '708 patent, Baerveldt explains that "the use of an impregnated foam sealant as an elastic recovery or return force mechanism has the dual advantage that the system can remain watertight immediately below the level of the cover plate while at the same time the impregnated foam sealant acts as the return force or stabilizing element for the cover plate." Id. at Col. 2:25-30.  The '708 patent issued to Baerveldt on March 18, 2003 and expires on August 31, 2020.  Upon request by MM Systems and a third party, on March 23, 2016, the U.S. Patent and Trademark Office ("USPTO") reexamined the '708 patent and issued Ex Parte Reexamination Certificate No. 6,532,708 C1, which confirmed claims 1-3, 7, and 8 as originally issued, claims 4-6 as amended and original claim 5 which depends on amended claim 4, and new claims 9-28 that were presented during the reexamination proceedings.  MM Systems filed another request for reexamination of the '708 patent, and on June 7, 2016, the USPTO issued Ex Part Reexamination Certificate No. 6,532,708 C2, which confirmed Claims 4-8.[2]

III.    **Claim Construction**

The parties have asked the court to construe certain terms in amended claims 4 and 6, which are the only asserted independent claims.  I address the terms by claim.

---

[2] The USPTO did not reexamine Claims 1-3 or 9-28.  See Docket # 85-3, Col. 1:10-11.

## A.    Claim 4[3]

Claim 4 of the reexamined '708 patent claims:

> A seismic/expansion joint seal and cover comprising:
> a cover plate;
> a central spine extending downwardly from said cover plate and positioned in a joint between substrates such that said cover plate overlies said joint, said central spine having a first side and a second side; and
> at least one first layer of a resilient compressible foam sealant disposed on [each side of] said first side of said central spine between said central spine and a first of said substrates and at least one second layer of said resilient compressible foam sealant disposed on said second side of said central spine between said central spine and a second of said substrates, said first layer and said second layer of said resilient compressible foam sealant are configured to substantially maintain said position of said central spine in said joint without support below said central spine when said cover plate is detached from said central spine, each layer of said compressible foam sealant [layer] has a low modulus elastomeric sealant applied to the top surface thereof;
> wherein, said central spine and said first layer and said second layer of resilient compressible foam sealant are configured to accommodate movement of said substrates by said first layer and said second layer of said resilient compressible foam sealant compressing and expanding in relation to said movement and providing a force to said central spine such that said central spin remains substantially centered in said joint and said cover plate remains substantially centered over said joint.

Docket # 85-2, Col. 1:23-51.

### 1.    "Cover plate"

The first disputed term in claim 4 is "cover plate."  The parties' proposed

constructions are as follows:

---

[3] Each of the terms construed in claim 4, with the exception of the term discussed in Section III.A.6 infra, are equally applicable to claim 6.

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| "device that spans an opening such as an expansion and seismic joint" | "a plate that covers the joint horizontally and is detachable from the central spine extending downwardly from it" |

The substantive differences between the parties' proposed constructions are MM Systems' two limitations requiring that the cover plate be both horizontally placed and detachable.  The ordinary definition of the word "horizontal" is "parallel to or in the plane of the horizon."  Webster's II New Riverside Dictionary 592 (1984).  Defendant's construction, therefore, imposes a limitation that the plate cover the joint "parallel to or in the plane of the horizon."  But, the specification acknowledges that the invention may be applied to situations involving "joint irregularity, in width, vertical, and horizontal alignment, occurring during the construction process."  Docket # 85-1, Col. 3:52–54.  In other words, the invention encompasses use of joint covers for joints that are vertically or horizontally aligned in relation to the ground; and if the joint is horizontally aligned, then the plate would cover the joint vertically.

Turning to the second dispute, although courts "normally do not interpret claim terms in a way that excludes embodiments disclosed in the specification[,]" they can be interpreted in such a manner if "those embodiments are clearly disclaimed in the specification . . . or prosecution history."  Oatey Co. v. IPS Corp., 514 F.3d 1271, 1276–77 (Fed. Cir. 2008) (citations omitted).  Here, the '708 patent specification states that one of the "two objects of the present invention" is "that the cover plate should be removable to permit inspection of the joint below."  Docket # 85-1, Col. 2:5-7.  And although Figure 3 "illustrates the simplest form of the present invention," id. at Col. 3:7–8, the specification notes that it "does not allow for an inspection of the joint

5

beneath the slide plate as the T section is one solid piece.  ***Therefore, provision must be made***, as in FIG. 4 onwards, ***for the ability to remove the top cover plate/slide*** assembly from that portion contained within the throat of the joint."  Id. at Col. 3:29-35 (emphasis added).  Accordingly, the specification by its express terms disclaims the non-detachable cover in Figure 3 of the '708 patent because it does not address one of the two primary purposes of the invention; instead, the specification provides support for requiring the limitation proposed by MM Systems that the cover plate be detachable. Further, original claims 1, 7 and 8, and amended claims 4[4] and 6 (all of which are independent claims) provide that the cover plate is detachable from the central spine. See Rexnord Corp. v. Laitram Corp., 274 F.3d 1336, 1342–43 (Fed. Cir. 2001) ("[A] claim term should be construed consistently with its appearance in other places in the same claim or in other claims of the same patent."). The language of the '708 patent, therefore, supports a limitation that the cover plate is detachable from the central spine.

| **Court's construction** | A device that is detachable from the central spine and extends across the width of an expansion and seismic joint |
|---|---|

---

[4] Emseal disputes that claim 4 includes such a limitation and argues that construing it in such a manner would render claim 6 superfluous.  First, although amended claim 4 does not include the exact language as claim 6 describing the cover plate as "detachable from said central spine," it does provide that the "cover plate is detached from said central spine."  Docket # 85-2, Col. 1:39-40.  Second, such an interpretation would not render claim 6 superfluous as the main distinction between the two claims appears to be the configuration of the resilient compressible foam sealant as discussed below.

### 2.    "Resilient compressible foam sealant"[5]

The next term to be construed is "resilient compressible foam sealant," for which the parties' proposed constructions are as follows:

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| "foam configured to accommodate movement and provide a recovery or return force that does not readily experience compression set" | "a permanently resilient foam material that never experiences compression set" |

MM Systems' asserts that its proposed construction is supported by the prosecution history.  Specifically, it relies primarily on statements made by Emseal to the USPTO during reexamination of the '708 patent in which Emseal explained that "other mechanical assistance" was used "to provide sufficient and meaningful long term return/recovery force (e.g., backpressure) *over the life of the system*."  Docket # 86-3, at 16–17 (emphasis added); see also Docket # 86-10, at 5 (same).  MM Systems interprets this phrase, "over the life of the system," to mean "permanent."  But there is nothing, either in the prosecution history or the patent itself, that supports such an interpretation.  Further, the citations that MM Systems provides in support of its construction are referring to passages in which Emseal was distinguishing the claimed invention from the prior art, which used additional structural support to stabilize the elastomeric extrusions in the joints for proper operation.  Thus, the focus in these cited passages is about the inventive configuration of the resilient compressible foam in the

---

[5]  The parties only propose construction of the term "resilient compressible foam," but that term is consistently referred throughout the asserted claims of the '708 patent as "resilient compressible foam sealant."  Accordingly, it is appropriate to construe the term in its entirety.  Similar to the approach below regarding the term "low modulus elastomeric sealant," I will adopt the parties' agreed upon construction of the term "sealant".

joint such that no additional structural support is needed as compared to the prior art,

and not about the durability of the resilient foam material.

| Court's construction | Foam material configured to accommodate movement and provide a recovery or return force that does not readily experience compression set and is used to seal a surface or opening to prevent the passage of a liquid or gas |
|---|---|

### 3.   "Second layer"

The next term to construe is "second layer," for which the parties have proposed

the following constructions:

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| "a second thickness which may or may not be distinct from another thickness" | "a single piece of resilient compressible foam sealant that is separate from the first layer. One of the two sealants shown in Figs. 3-5 (element 3); and 7 (element 3)" |

The main contention between the parties is whether this "second layer" of

resilient compressible foam sealant is distinct and separate from the first layer.  The

Federal Circuit has noted that "[t]he use of the terms 'first' and 'second' is a common

patent-law convention to distinguish between repeated instances of an element or

limitation."  3M Innovative Properties Co. v. Avery Dennison Corp., 350 F.3d 1365,

1371 (Fed. Cir. 2003) (citations omitted).  It has further noted that such modifiers

"should not in and of itself impose a serial or temporal limitation[,]" id., or spatial

limitation.  See Free Motion Fitness, Inc. v. Cybex Int'l, Inc., 423 F.3d 1343, 1348 (Fed.

Cir. 2005) (rejecting the district court's construction that the term "first" denoted a spatial

location).

Here too, the modifiers "first" and "second" distinguish between the repeated instances of configuring the resilient compressible foam sealant between one side of the central spine and a substrate and the other side of the central spine and another substrate. But it cannot be ignored that there are two distinct sides where the foam sealant must be placed. The language in original claim 4 described "at least one layer of a resilient compressible foam sealant on each side of said spine[.]" See Docket # 85-1, Col. 6:28–29. The claim was then later amended to include "at least one second layer of said resilient compressible foam sealant disposed on said second side of said central spine[.]" Docket # 85-2, Col. 1:32–34. Therefore, in the context of this patent, the intrinsic record supports an interpretation that the second layer of resilient compressible foam sealant is distinct from the first. There is no support, however, to determine whether the sealants should be construed as "single" or "separate" "pieces" as proposed by MM Systems.

| Court's construction | A layer of resilient compressible foam sealant that is distinct and separate from the layer of resilient compressible foam sealant on the opposite side of the central spine |
|---|---|

### 4.    "Without support below" / "without additional support below"

Also disputed are the terms "without support below" / "without additional support below" for which the parties provide the following proposed constructions:

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| "supported by only the foam with no additional structural elements" | "no part of the seismic/expansion joint seal and cover is below the spine" |

MM Systems' proposed construction requiring that "no part of the seismic/expansion joint seal and cover is below the spine" misses the mark.  As discussed above, the intrinsic record explains that during reexamination of the '708 patent, Emseal inserted the terms "without support below" / "without additional support below" to distinguish the claimed invention from prior art that used additional structural support to stabilize the elastomeric extrusions in the joints for proper operation. Specifically, it represented to the USPTO the following:

> Importantly, Migua relies on structural support to stabilize the elastomeric extrusion for proper operation. . . . Accordingly, Patent Owner as with others in the industry, understand that systems employing elastomeric extrusions must include sufficient structure to support the extrusion so that they can function as intended. . . . Accordingly, Patent Owner's invention, as previously and as now claimed, provides a system that in contrast to this need for an additional structural stabilizing element provides that the first layer and the second layer of resilient compressible foam sealant are configured to substantially maintain the position of the central spine in the joint without support below the spine when the cover plate is detached from the central spine (Claim 4) and to support the central spine substantially vertically in the joint without additional support below the central spine when the cover plate is detached from the central spine (Claim 6), while also providing the water resistant seal and return/recovery force elements.

Emseal's Amendment and Response to Final Office Action, Docket # 86-4, at 29-30. The intrinsic record is clear that only the configuration of the resilient compressible foam sealant is providing support in the joint, and nothing else.  Further, there is no need to include MM Systems' proposed limitation "below the spine" in the construction of the terms because the claims themselves clearly demarcate where the support ends.

See e.g., Claim 4, Docket # 85-2, Col. 1:37-38 ("configured to substantially maintain said position of said central spine in said joint without support below **said central spine** when said cover plate is detached from said central spine") (emphasis added).

| Court's construction | Supported by only the resilient compressible foam sealant(s) with no additional structural elements |
|---|---|

### 5.    "Low modulus elastomeric sealant"

The next disputed term is "low modulus elastomeric sealant" for which the parties propose the following constructions:

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| "a natural or synthetic substance used to seal a surface or opening to prevent the passage of a liquid or gas, possessing a property of elasticity, be flexible, and be configured to accommodate movement" | "an elastic, water resistant sealant such as silicone, having a tensile strength at 100 percent elongation of less than 60 psi" |

Since "sealant" has already been construed, the dispute here is over how to define "low modulus elastomeric" and whether to impose numerical limitations.  Neither party's proposed construction is entirely correct.

Both parties agree that the term "low modulus" is a scientific and technical term known to those in the field of expansion joints.  See Docket # 89, at 11 (Emseal acknowledging that "low modulus" is a "meaningful scientific term that is well accepted [sic] by those skilled in the relevant art"); Docket # 86, at 7 (MM Systems' referring to it as a "technical term").  Further, Emseal agrees that the word "modulus" refers to "the **degree** to which a substance possesses a property, such as elasticity."  Docket # 85, at

20 (emphasis added). Yet, Emseal's proposed construction—"possessing a property of elasticity; flexible"—does not provide any guidance on how to measure the degree of flexibility.  Although the specification is the best source for understanding a technical term, the '708 patent does not provide any numerical guidance on how to measure this property; it does, however, provide an example of an ultra low modulus elastomeric sealant.  See Docket # 85-1, Col. 4:17–20 ("The use of an ultra low modulus sealant (such as Down Corning 890 RTV Silicone Sealant.").  Thus, we turn to the available extrinsic evidence.  See Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc., 381 F.3d 1111, 1116 (Fed. Cir. 2004) (A court can look to "extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art.").  The technical specification sheet for Dow Corning 890 provides useful guidance for characterizing a sealant's modulus property; specifically, it provides a measurement of the modulus at 100 percent elongation in terms of pounds per square inch ("psi"); thus, confirming that a numerical limitation should be imposed in the construction of the term.  See Docket # 86-5, at 1 (Dow Corning 890 technical specification sheet providing the "typical properties" of the product with numerical characterization of the joint modulus in psi).[6]

Because Emseal has not provided any proposed numerical range—although it had ample opportunity to do so both in its reply brief to MM Systems' opening claim construction brief and again in its supplemental briefing—I am left only with MM Systems' proposed construction.  The inclusion of the term "tensile strength" in MM

---

[6] Although the Dow Corning 890 specification sheet was provided to the court in defendant's briefing, I note that the document bears Emseal's bates-stamp pre-fix, indicating that this document was produced by plaintiff.

Systems' proposed construction, however, is an inappropriate limitation.  First, Webster's Dictionary defines "tensile strength" to mean "resistance of a material to a force tending to tear it apart."  Webster's II New Riverside Dictionary 1193 (1984).  But the terms to be construed here refer to the properties and measurement of elasticity, which is defined as "the property of returning to an initial state or form following deformation."  Id. at 421; see also Docket # 85-1, Col. 4:24–26 ("[T]he use of the correctly chosen [low modulus elastomeric sealant] . . . will enhance the elastic properties of the double seal configuration.").  MM Systems' presumably adopted the term "tensile strength" because the ISO 11600 defined "modulus" in terms of the "tensile modulus," which used the newton per millimeter unit.  Yet MM Systems' proposed construction converts the tensile modulus measurement to the psi unit, consistent with the unit of measurement provided in the Dow Corning 890 specification sheet.  Therefore, it appears inaccurate to describe the measurement as "tensile strength."

| Court's construction | A substance used to seal a surface or opening to prevent the passage of a liquid or gas, possessing a property of elasticity, and having at 100 percent elongation a psi of 60 or less |
| --- | --- |

### 6.   "Configured to substantially[7] maintain said position of said central spine in said joint"

The final term in Claim 4 to be construed is "configured to substantially maintain

---

[7]  As discussed during the Markman hearing, the term "substantially" does not need to be separately construed because the plain and ordinary meaning applies.  See Circle R, Inc. v. Trail King Indus., Inc., 21 Fed. App'x 894, 898 (Fed. Cir. 2001) (relying on the plain and ordinary definition of "substantially" in support of its finding that the district court erred when construing "substantially" to mean "entirely").

said position of said central spine in said joint."  The parties have proposed the

following constructions:

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| "said first layer and said second layer of said resilient compressible foam sealant are configured to largely but not wholly keep the central spine in the original location of the central spine in the joint between the substrates" | "configured to maintain the position of the central spine both vertically against gravity and horizontally without any other supports so that when the cover plate is removed, the spine remains in its operational position to allow inspection of operational conditions, and to allow attachment or reattachment of the cover plate" |

Defendant's proposed construction includes redundant limitations because they

exist in the surrounding terms of the claim.  The claim states: the sealant "are

configured to substantially maintain said position of said central spine in said joint

**without support below** said central spine **when said cover plate is detached** from

said central spine[.]"  Docket # 85-2, Col. 1:37–40 (emphasis added).  Thus, there is no

need to include the following limitation from MM Systems' proposed construction:

"horizontally without any other supports so that when the cover plate is removed."

Further, there is no support in the intrinsic record that the only reason the sealants are

configured to substantially maintain said position of said central spine in the joint is "to

allow inspection of operation conditions, and to allow attachment or reattachment of the

cover plate."  Nor is there a need to include in the construction the reason for removing

the cover plate.  The claim itself simply states "when said cover plate is detached."  Id.

I also reject MM Systems' limitation regarding the "vertical" maintenance of the position

because such an interpretation would render the limitation in claim 6, discussed below,

14

superfluous.

Emseal's proposed construction uses the phrase "original location," but fails to define what the original location was that the resilient compressible foam sealants are configured to maintain.  The specification, however, provides some helpful guidance.  It explains that joints experience movements on three planes, and that "[v]arious mechanisms [were] employed to . . . stabilize the expansion joint cover and restore it into a 'neutral position' relative to the movement that has taken place."  Docket # 85-1, Col. 1:23–27.  It further explains that return-force elements were used "to maintain the joint cover in a median position relative to the joint movements occurring."  Id. at Col. 1:18–21; see also id. at Col. 5:20-23 (describing an embodiment where the impregnated foam sealant is used "as a centring [sic] means on each side of the T.").  It is clear from the specification that the "said position" which is being maintained by the sealants is the central location of the central spine in the joint after movement in the joint has taken place.

| Court's construction | Said first layer and said second layer of said resilient compressible foam sealant are **configured to largely but not wholly restore said central spine to a median position relative to the joint movement that has taken place** without support below said central spine when said cover plate is detached from said central spine[8] |
| --- | --- |

---

[8]  To coherently understand the disputed term, I have included the surrounding claim language; however, only the portion in bolded text constitutes the court's construction of the term "configured to substantially maintain said position of said central spine in said joint."

### B.    Claim 6

Claim 6 of the re-examined '708 patent claims:

A seismic/expansion joint seal and cover comprising:

> a cover plate;
>
> a central spine extending downwardly from said cover plate and positioned in a joint between substrates such that said cover plate overlies said joint, said central spine having a first side and a second side, said cover plate is detachable from said central spine; and
>
> at least one first layer of a resilient compressible foam sealant disposed on each side of said first side of said central spine between said central spine and a first of said substrates and at least one second layer of said resilient compressible foam sealant disposed on said second side of said central spine between said central spine and a second of said substrates, said first layer and said second layer of said resilient compressible foam sealant are configured to support said central spine substantially vertically in said joint without additional support below said central spine when said cover plate is detached from said central spine, each layer of said compressible foam layer sealant has a low modulus elastomeric sealant applied to the top surface thereof;
>
> wherein, said central spine and said first layer and said second layer of resilient compressible foam sealant are configured to accommodate movement of said substrates by said first layer and said second layer of said resilient compressible foam sealant compressing and expanding in relation to said movement and providing a force to said central spine such that said central spin remains substantially centered in said joint and said cover plate remains substantially centered over said joint.

Docket # 85-2, Col. 1:52 – Col. 2:1-14.

###    1.    "Configured to support said central spine substantially vertically in said joint"

The disputed term in claim 6 is "configured to support said central spine substantially vertically in said joint."  The parties' proposed constructions are as follows:

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| "said first layer and said second layer of said resilient compressible foam sealant are configured to hold said central spine largely but not wholly vertically in the original location of the central spine in the joint between the substrates" | "configured to maintain the position of the central spine vertically against gravity without any other supports, so that when the cover plate is removed, the spine remains in its operational position to allow inspection of operational conditions, and to allow attachment or reattachment of the cover plate" |

For the same reasons discussed above regarding the sixth term in dispute, I

reject MM Systems' proposed construction and Emseal's unsupported limitation of

"original location."

| Court's construction | Said first layer and said second layer of said resilient compressible foam sealant are **configured to hold said central spine largely but not wholly vertically in the joint between the substrates relative to the joint movement that has taken place** without additional support below said central spine when said cover plate is detached from said central spine[9] |
|---|---|

_____        _____
March 1, 2017                          /s/Rya W. Zobel
DATE                                     RYA W. ZOBEL
                                         SENIOR UNITED STATES DISTRICT JUDGE

---

[9] Again, I have included the surrounding claim language to provide context to the disputed term; however, only the portion in bolded text constitutes the court's construction of the term "configured to support said central spine substantially vertically in said joint."